IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOHN HUDGENS, ESTER HUDGENS, WILLIAM YOUNG and PATSIE YOUNG individually and on behalf of a class of persons similarly situated<br>　　Plaintiffs,<br><br>v.<br><br>DAIMLERCHRYSLER CORP.<br><br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NUMBER<br>)<br>) 01-C-0106-W<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

Presently before the Court is Defendant's Motion to Dismiss the claims brought by Plaintiffs who allege violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, and the Racketeer Influenced and Corrupt Organization Act, ("RICO"), 18 U.S.C. § 1961, *et. seq.* The Court finds that Plaintiffs' ERISA claims are due to be dismissed <u>without</u> prejudice, while the RICO claims are due to be dismissed <u>with</u> prejudice.

**FACTS**

The present dispute revolves around the sale by defendant, DaimlerChrysler Corporation ("Chrysler"), of wholly-owned division, Pentastar Electronics, Inc. ("Pentastar"). Both of the named male plaintiffs were employed by Pentastar, a defense contractor in Huntsville, Alabama. They were non-bargaining unit employees who enjoyed numerous employment benefits, including a retirement plan, profit sharing benefits, medical insurance, and an automobile lease

plan. Presumably, the named female plaintiffs are the wives of the male plaintiffs.

Prior to its merger with Daimler, Chrysler began selling several of its wholly-owned divisions, including Pentastar. According to Plaintiffs,[1] Chrysler sought to sell Pentastar for several reasons: 1) because Pentastar had significant pension obligations caused by its aging workforce, which had an average age of approximately forty-seven years; and 2) because, as a defense contractor, Pentastar would become worthless after the merger with Daimler, a foreign corporation. (Compl. at ¶ 13.) United States government regulations prohibit foreign corporate involvement with defense contractors.

Chrysler had difficulty locating an outside buyer for Pentastar, however. One of the causes for this difficulty was Chrysler's insistence that the buyer assume the future pension obligations Chrysler had incurred. Ultimately, according to the evidence from a companion case, *Hicks v. DaimlerChrysler*, CV 99-C-1865-W, Pentastar's President and several private investors formed PEI Acquisition Corporation ("PEI") for the stated objective of acquiring Pentastar. PEI was capitalized in December 1996 and, effective January 10, 1997, Chrysler sold Pentastar to PEI. According to Plaintiffs, Chrysler sold Pentastar at a steep discount.

Additionally, Plaintiffs allege that Chrysler engaged in improprieties with respect to the pension benefits of the former Pentastar employees. While the allegations surrounding the resulting pension plan framework are not clear from the complaint, Chrysler apparently discontinued its contributions to the pension plan, which PEI ultimately took over. However, the former Pentastar employees were only able to collect their pension benefits if they continued

---

[1] On a Rule 12(b)(6) motion to dismiss, "[a]ll well-pleaded facts are accepted as true, and all reasonable inferences drawn therefrom are construed in the light most favorable to the plaintiff." *Ehlert v. Singer*, 245 F.3d 1313, 1315 (11th Cir. 2001).

working for PEI until such time as they qualified for their pensions. (Compl. at ¶¶ 16, 20-21.) Plaintiffs complain that Chrysler's treatment of the non-bargaining unit employees differed strikingly from the treatment of the bargaining unit employees. While the bargaining unit employees were offered employment with Chrysler, the non-bargaining unit employees were not guaranteed employment with Chrysler.

Plaintiffs claim that the PEI purchase of Pentastar accomplished several goals: 1) the purchase helped eliminate one impediment to the merger with Daimler, 2) the purchase allowed Chrysler to write down approximately $51 million in losses on its 1997 income taxes, and 3) the purchase "reduced and froze" Chrysler's long-term pension obligations to the aging Pentastar workforce. (Compl. at ¶ 18.) In the process of accomplishing these goals, Plaintiffs claim Chrysler violated federal law. First, Plaintiffs claim that Chrysler's sale of Pentastar constituted a "misappropriation of benefit plan assets," and a "breach of fiduciary and contractual duties" in violation of ERISA. *See* 29 U.S.C. § 1001, *et. seq*. Plaintiffs also claim that the sale violated ERISA, the federal racketeering statute prohibiting misconduct related to employee benefit plans. 18 U.S.C. § 1954. According to Plaintiffs, by violating the racketeering statute, Chrysler engaged in the requisite "predicate" conduct for RICO liability. *See* 18 U.S.C. § 1962(a); *H.J Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 232 (1988).

## DISCUSSION

A.   ERISA CLAIMS.

Like the ERISA claims in *Hicks v. DaimlerChrysler*, the present ERISA claims must fail. In *Hicks*, this Court granted summary judgment to the defendant, DaimlerChrysler Corporation,

after determining, *inter alia*, that the *Hicks* Plaintiffs failed to establish issues of triable fact with respect to their ERISA claims. (*Hicks*, Doc. 77, Findings of Fact And Conclusion of Law on Defs.' Mot. For Summ. J. at p. 3); 29 U.S.C. § 1132(a)(1)(B); 29 U.S.C. § 1140. While Plaintiffs in the present case provide more details in their complaint, the current Plaintiffs allege facts similar to the facts alleged by the *Hicks* Plaintiffs. (*See Hicks,* Compl. at ¶¶ 12-15, 33-39; *Hudgens*, Compl. at ¶¶ 31-43.) Indeed, Plaintiffs in the present case, unsuccessfully sought to intervene in the *Hicks* case. (*Hicks*, Doc. 59, Pls.' Mot. For Leave To Amend Compl.) Given the similarity of the ERISA allegations in both cases and Plaintiffs' attempts to intervene in *Hicks*, the Court finds that the present Plaintiffs' ERISA claims are due to be dismissed for the same reasons as those articulated in *Hicks*.

      The Court will, however, dismiss the present ERISA claims <u>without</u> prejudice. In *Hicks*, the evidence established that the named Plaintiffs had failed to exhaust their administrative remedies and that, upon the sale of Pentastar, the named Plaintiffs had not been deprived of any benefits to which they were entitled. (*Hicks*, Findings of Fact at pp. 2-3.) In the present case, however, Plaintiffs claim that they have exhausted their administrative remedies "and/or [they] have been denied any meaningful access to those procedures." (*Hudgens*, Compl. at ¶ 37.) In addition, the Court is unaware of whether the present Plaintiffs were actually deprived of any benefits and/or whether any evidence exists that would create triable issues of fact. While the Court doubts as much, the Court will dismiss Plaintiffs' ERISA claims <u>without</u> prejudice to Plaintiffs' right to re-file those claims, should they have evidence of material facts that would: 1) distinguish their ERISA allegations from those made by the Plaintiffs in *Hicks*, and 2) create triable issues of fact.

B.  RICO CLAIMS.

RICO "imposes criminal and civil liability upon those who engage in certain 'prohibited activities.'" *H.J Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 232 (1988) (citing 18 U.S.C. §§ 1961-68). The Eleventh Circuit Court of Appeals has spelled out the elements needed to establish a civil RICO claim: 1) conduct, 2) of an enterprise, 3) through a "pattern" of "racketeering." *See Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311 (11th Cir. 2000) (citation omitted). Defendants argue that Plaintiffs' RICO claim fails because Plaintiffs have failed to identify an "enterprise" or a "pattern" of racketeering.

1.  Enterprise.

The RICO statute prohibits a "person" from conducting or participating in the affairs of an "enterprise" through a "pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (emphasis added). "[A]ny individual or entity capable of holding a legal or beneficial interest in property" constitutes a "person" for purposes of RICO. 18 U.S.C. § 1961(3). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added)

> [T[he definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however, loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes ....

*United States v. Goldin Industries, Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000) (hereinafter *Goldin II*).

In the Eleventh Circuit, a defendant cannot be a "person" and "the enterprise" for purposes of the RICO statute. *Goldin II*, 219 F.3d at 1275 (citing *United Goldin Industries, Inc.*,

5

219 F.3d 1268 (11 Cir. 2000) (hereinafter *Goldin I*)). "The prohibition against the unity of person and enterprise applies only when the singular person or entity is defined as both the person and the only entity comprising the enterprise." *Goldin II*, 219 F.3d at 1275 (emphasis added) (citations omitted). Accordingly, RICO claims are not actionable where the alleged enterprise is comprised of the defendant and its wholly-owned subsidiary because a defendant cannot "associate" with itself to form an enterprise. *See Yellow Bus Lines, Inc. v. Local Union 639*, 883 F.2d 132, 139 (D.C. Cir. 1998) (citation omitted); *Goldin II*, 219 F.3d at 1275-76; *Discon, Inc. v. Nynex Corp.*, 93 F.3d 1055, 1063-64 (2d Cir. 1996). On the other hand, "a corporate entity [may] be[] held liable as a defendant ... where it associates with others to form an enterprise that is sufficiently distinct from itself." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343 (2d Cir. 1994); *accord Goldin II*, 219 F.3d at 1275-76.

Plaintiffs state a claim upon which relief may be granted when they allege that Chrysler, PEI, and the unnamed "insiders" engaged in an "enterprise" for purposes of the RICO statute. (*See Hudgens*, Compl. at ¶ 53.) While the combination of Chrysler and its wholly-owned division, Pentastar, cannot form an enterprise separate from the "person" of defendant Chrysler, a trickier question involves whether the unnamed "insiders," in conjunction with the corporate entities, may form an enterprise.

This Court is not convinced that the Plaintiffs in the present case have failed to state a claim upon which relief might be granted with respect to the alleged enterprise of Chrysler, Pentastar and the unnamed "insiders." An enterprise does not exist where a corporate defendant associates with is own employees or agents who are simply "acting within the scope of their authority as officers" of the defendant. *See Riverwoods*, 30 F.3d at 344-45. In the present case,

however, a reasonable argument can be made that the unnamed insiders who formed PEI, which is a separate and distinct company from Chrysler, were not acting solely within the scope of their authority as employees of Chrysler; the insiders were not solely "carrying on the business" of Chrysler when the insiders formed PEI. *See Riverwoods*, 30 F.3d at 344 (noting that an enterprise does not exist where the associating individuals consist of the defendant and its employees who are "carrying out the business" of the defendant); *Discon, Inc.*, 93 F.3d at 1064 (finding that the plaintiff could not establish an "enterprise" where employees and agents were "act[ing] on behalf of the corporation"). Accordingly, the Court finds that Chrysler is not entitled to a Rule 12(b)(6) dismissal based upon their "enterprise" argument.[2]

    2.   <u>Pattern of racketeering</u>.

In a civil RICO action, Plaintiffs "must identify and prove a pattern of racketeering activity .... The phrase 'racketeering activity' is defined [in the statute] as including any act which is indictable under a lengthy list of criminal offenses ...." *Langford*, 231 F.3d at 1310-11 (emphasis supplied) (citing 18 U.S.C. § 1961(5)). The RICO statute does not define what type of conduct constitutes a "pattern" of racketeering. However, the United States Supreme Court has interpreted a "pattern of racketeering" as requiring two predicate racketeering acts: 1) that are related, and 2) that involve continuing criminal activity or the threat of continuing criminal activity. *Northwestern Bell*, 492 U.S. at 239, 241. This latter requirement, continuity, "is both a closed-ended and open-ended concept, referring either to a closed period of repeated conduct, or

---

    [2] The Court notes that the evidence from the *Hicks* case establishes that the PEI investors included several "private" investors. Assuming that these private investors were non-Chrysler, non-Pentastar employees, their involvement in the alleged misconduct would have been sufficient to establish an "enterprise" for RICO purposes.

to past conduct that by its nature projects into the future with a threat of repetition."
*Northwestern Bell*, 492 U.S. at 241 (citation omitted).

      Chrysler argues that Plaintiffs complain only of a solitary event that occurred at a "finite" point in time: namely the sale of Pentastar. Accordingly, argues Chrysler, Plaintiffs have not alleged two predicate acts, nor have Plaintiffs satisfied the continuity requirement. In response, Plaintiffs argue that they have alleged multiple violations of 18 U.S.C. § 1954, which prohibits persons from receiving or giving a thing of value in exchange for influencing decisions or actions relating to employee benefit plans. Presumably, Plaintiffs contend that a separate violation of § 1954 occurred for each employee who allegedly lost benefits. (*See Hudgens*, Compl. at ¶¶ 53, 12 (noting that the "misappropriation of benefits" "constituted a pattern of racketeering because each employee's retirement benefits were altered").)

      Assuming, without deciding, that these purported multiple violations of 18 U.S.C. § 1954 satisfy the "two predicate act" requirement, the Court finds that Plaintiffs have failed to satisfy the continuity requirement. In their complaint, Plaintiffs allege that the "misappropriation of benefits."

> constituted a pattern of racketeering activity because each employee's retirement benefits were altered in the same or similar fashion as the result of DaimlerChrysler's agreement to sell Pentastar to PEI. The course of conduct engaged in this instance was to effectuate the sale of Pentastar to PEI and to entice Pentastar employees to continue their employment with PEI

(*Hudgens*, Compl. at ¶¶ 12, 53.) Similarly, in their response to the motion to dismiss, Plaintiffs argue that they have alleged continuity because Chrysler and its cohorts engaged in "numerous activities" or a "course of conduct," lasting from 1995 through 1997, whose "end result" was the sale of Pentastar. Furthermore, argue Plaintiffs, Chrysler continues "to this day" to improperly

8

retain the value of Plaintiffs' employment benefits.

Plaintiff's argument is without merit. A party may demonstrate closed-ended continuity by "proving a <u>series</u> of related predicates extending over a <u>substantial</u> period of time.... [because] Congress was concerned in RICO with long-term criminal conduct." *Northwestern Bell*, 492 U.S. at 241 (emphasis supplied). However, Plaintiffs simply allege that after approximately three years of negotiations, Chrysler received or gave a thing of value in exchange for influencing Chrysler's decisions or actions relating to employee benefit plans. *See* 18 U.S.C. § 1954. These allegations do not constitute "closed-ended" continuity because they do not describe a "series" of related predicates or a "substantial" time-frame. Rather, the challenged conduct is more appropriately characterized as a solitary criminal act, albeit one perpetrated against more than one individual, occurring over a period of approximately three years. Plaintiffs direct this Court to no authority for the proposition that a solitary criminal act lasting approximately three years constitutes a "series" of criminal conduct. *See Northwestern Bell*, 492 U.S. at 241 (noting that closed-ended continuity involves "repeated conduct"). Nor is there any authority for the proposition that the three year time-frame alone constitutes a "substantial" time period.

Not only do Plaintiffs fail to allege facts constituting closed-ended continuity, but Plaintiffs also fail to allege facts that constitute "open-ended" continuity. "Open-ended" continuity can be established by showing "continuing criminal" activity or the threat of "continuing criminal" activity. *Northwestern*, 492 U.S. at 229, 241-2. The criminal conduct about which Plaintiffs complain ended with the sale of Pentastar. While Plaintiffs contend that Chrysler continues to improperly retain the value of the Plaintiff's employment benefits, this contention does not establish "continuing" criminal activity or its threat. The benefits statute

does not criminalize the <u>retention</u> of employment benefits that have been altered by virtue of improper influence. 18 U.S.C. § 1954. Instead, the statute criminalizes the actual improper <u>influence</u> of decisions or actions relating to employee benefit plans. Here, once the Pentastar sale was consummated, the improper influence had a "natural ending and no threat of ongoing activity." *See Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Committee*, 953 F.2d 587, 593-94 (11th Cir. 1992) (citation omitted). Without evidence that the improper influence itself was likely to continue, Plaintiffs cannot establish open-ended continuity. *See id.* (finding that the employer's alleged scheme to deprive employees of vacation benefits did not project "into the future with the threat of repetition") (citing *Northwestern Bell*, 492 U.S. at 241.) Accordingly, Plaintiffs' have failed to plead facts sufficient to meet RICO's continuity requirement and this action is due to be dismissed.

    By separate order, Defendant's Motion to Dismiss will be granted and the case dismissed.

DONE this __31st__ day of __December__, 2001.

                                                           Chief United States District Judge
                                                           U. W. Clemon